Filed 6/24/14  Polaris Medical Academy v. Allen CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| POLARIS MEDICAL ACADEMY, LLC, et al.,<br><br>    Plaintiffs, Cross-defendants and Respondents,<br><br>      v.<br><br>MICHAEL ALLEN,<br><br>    Defendant, Cross-complainant and Appellant;<br><br>POLARIS MEDICAL ACADEMY CORPORATION,<br><br>    Defendant and Appellant. | G045800<br><br>(Super. Ct. No. 30-2008-00110096)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Robert J. Moss, Judge.  Affirmed as modified.  Request for judicial notice.  Granted.

Wellman & Warren, Scott W. Wellman and Derek Banducci for Defendant, Cross-complainant and Appellant and for Defendant and Appellant.

Law Offices of Allan E. Perry and Allan E. Perry for Plaintiffs, Cross-defendants and Respondents.

\*        \*        \*

## INTRODUCTION

Polaris Medical Academy, LLC (Polaris LLC), Touraj Jahangiri (T. Jahangiri), Reza Jahangiri (R. Jahangiri), and Farid Larijani (collectively referred to as Plaintiffs) sued Michael Allen and Polaris Medical Academy Corporation (Polaris Corp.) for various legal and equitable causes of action. Allen pursued a cross-complaint against Plaintiffs. Following a jury trial on the legal causes of action and a bench trial on the equitable causes of action, a judgment was entered awarding $400,000 in damages to Polaris LLC and $50,000 in damages to Allen, and issuing an injunction against Allen and Polaris Corp. The judgment stated Polaris LLC, T. Jahangiri, and Larijani "shall recover . . . attorneys' fees in the amount of _____."

Allen and Polaris Corp. appeal from the judgment. They did not file a separate notice of appeal from the postjudgment orders denying Allen's motion for attorney fees and granting Plaintiffs' motion for attorney fees in the amount of about $498,000.

We conclude (1) we have jurisdiction over Allen's challenge to the portion of the judgment stating Polaris LLC, T. Jahangiri, and Larijani shall recover attorney fees, and affirm that portion of the judgment; (2) the trial court did not err by granting nonsuit on Allen's causes of action for intentional misrepresentation and negligent misrepresentation; and (3) there is no evidence to show the existence of several items which the injunction requires Allen and Polaris Corp. to return. Accordingly, we modify the injunctive relief portion of the judgment and, in all other respects, affirm the judgment as so modified.

## FACTS

Polaris LLC was formed as a California limited liability company in February 2007. Its primary purpose was to provide certified instruction to cardiologists in the use of radiological equipment to diagnose cardiovascular conditions.

Allen, T. Jahangiri, R. Jahangiri, and Larijani entered into an operating agreement for Polaris LLC (the Operating Agreement). Under the Operating Agreement, T. Jahangiri received a 51 percent interest, R. Jahangiri received a 29 percent interest, Allen received a 10 percent interest, and Larijani received a 10 percent interest, in Polaris LLC. Allen became the chief financial officer and chief operating officer and received a base annual salary of $120,000.

According to Polaris LLC's business plan, "Jahangiri Financing" was to account for $403,120 in financing. Such financing was not provided. In June 2007, Allen approached R. Jahangiri and asked him to prove he and T. Jahangiri had the funds to invest in Polaris LLC. R. Jahangiri showed Allen a compilation of bank statements that renewed Allen's belief T. Jahangiri and R. Jahangiri could and would invest in Polaris LLC.

Polaris LLC began conducting classes in July 2007. By March 2008, it had received more than $300,000 in gross revenue. However, in January 2008, Allen reported that Polaris LLC was "technically insolvent" and had a negative net worth.

At a meeting on February 2, 2008, the members of the board voted to dissolve Polaris LLC and to terminate the employment of all employees, including Allen. The board tentatively divided the corporate assets among the members and agreed to meet later to discuss completing the dissolution. Allen understood his employment as an officer of Polaris LLC was terminated effective February 29, 2008.

The locks to the entrances of the Polaris LLC corporate offices were changed so that Allen could not gain entry. Allen was locked out because Larijani had reason to believe that Allen had removed some items from the corporate offices and Larijani did not want him to remove anything else.

Allen formed Polaris Corp., had it incorporated in March 2008, and served as its chief executive officer. Polaris Corp. offered classes to train cardiologists and radiologists in using medical imaging equipment. Allen used the Polaris LLC Web site

3

domain, teaching materials, and equipment and office furniture. He changed the street address of Polaris LLC to the new address of Polaris Corp. and changed the password settings of the Polaris LLC Web site.

## PROCEDURAL HISTORY

Plaintiffs' second amended complaint (the Complaint) asserted causes of action against Allen and Polaris Corp. for, among other things, declaratory relief, conversion, breach of contract, and violations of California's unfair competition law, Business and Professions Code section 17200 et seq. Allen pursued a cross-complaint (the Cross-complaint) against Plaintiffs for, among other things, declaratory relief, breach of oral contract, promissory estoppel, false promise fraud, intentional misrepresentation, and negligent misrepresentation.

The legal and equitable causes of action were bifurcated, and the legal causes of action were tried to a jury. During the jury trial, the court granted Plaintiffs' motions for nonsuit on the causes of action in the Cross-complaint for intentional misrepresentation and negligent misrepresentation.

On the Complaint, the jury found in favor of T. Jahangiri and Larijani and against Allen on the cause of action for breach of contract, and found in favor of Polaris LLC and against Allen and Polaris Corp. on the cause of action for conversion. The jury awarded no damages to T. Jahangiri and Larijani, and awarded $400,000 in damages to Polaris LLC.

On the Cross-complaint, the jury found in favor of Polaris LLC and against Allen on the cause of action for breach of the employment agreement, and found in favor of Allen and against Polaris LLC on the cause of action for breach of an agreement to reimburse expenses. The jury awarded Allen $50,000 in damages. The jury found in favor of T. Jahangiri and R. Jahangiri and against Allen on a cause of action for breach of an agreement to invest at least $500,000 in Polaris LLC.

4

After receiving the jury's verdict, the trial court decided the equitable issues. On the Complaint, the court found that Allen had engaged in unfair business practices in violation of Business and Professions Code section 17200 and issued an injunction requiring Allen and Polaris Corp. to cease certain practices and to relinquish possession of various items of both tangible and intangible property. On the Cross-complaint, the court found against Allen on the cause of action for promissory estoppel.

In July 2011, a judgment was entered reflecting the jury verdict and the trial court's decision on the equitable causes of action. The judgment stated: "Plaintiffs Polaris Medical Academy, LLC, Touraj Jahangiri and Farid Larijani shall recover costs in the amount of $_____ and attorneys' fees in the amount of $_____ for a total judgment of $_____." The trial court issued a statement of decision, the final sentence of which read, "[t]he court will consider any motion for attorneys' fees."

On September 2, 2011, the trial court denied Allen and Polaris Corp.'s motion for a new trial and motion for a judgment notwithstanding the verdict. On September 15, 2011, Allen and Polaris Corp. filed a notice of appeal "from the Superior Court's judgment entered on or about July 7, 2011."

In a minute order dated October 21, 2011, the trial court denied Allen's motion for attorney fees on the ground "Plaintiff was the prevailing party." None of the motion papers or opposition papers is in the record on appeal. Allen did not appeal from the order denying his motion for attorney fees.

In a minute order dated December 9, 2011, the trial court granted Plaintiffs' motion for attorney fees and awarded fees in the amount of $498,406.97. None of the motion papers or opposition papers is in the record on appeal. Neither Allen nor Polaris Corp. appealed from this order.

5

Allen and Polaris Corp. have requested we take judicial notice of a document, entitled "Discharge of Debtor," issued by the United States Bankruptcy Court, Central District of California, in bankruptcy case No. 8:12-bk-13926-CB. We may take judicial notice of this document under Evidence Code sections 452, subdivisions (c) and (d), and 459, and we grant the request. The Discharge of Debtor granted Allen a discharge under section 727 of title 11 of the United States Code.

Due to Allen's discharge in bankruptcy, Allen and Polaris Corp. state in the reply brief: "This Court should disregard those issues for which any additional relief, beyond a bankruptcy discharge, would be ineffectual because such issues are moot and Allen and [Polaris Corp.] expressly abandon such issues at this time for exactly that reason." The abandoned issues are parts I., II., and III. of the Argument section of the appellants' opening brief. The remaining issues are (1) whether the trial court erred by entering a judgment that failed to award Allen attorney fees as the prevailing party on a contract, (2) whether the trial court erred by granting the motions for nonsuit on the intentional misrepresentation and negligent misrepresentation causes of action, and (3) whether the trial court's injunction required Allen and Polaris Corp. to return items of property that do not exist.

## DISCUSSION

## I.

## Attorney Fees

A. *Appellate Jurisdiction*

Allen did not appeal from the postjudgment order granting Plaintiffs' motion for attorney fees or from the order denying his motion for attorney fees. Allen appealed only from the judgment, which stated that Polaris LLC, T. Jahangiri, and

6

Larijani shall recover costs and attorney fees and left a blank for the amount. On appeal, Allen argues the trial court erred by entering a judgment that failed to award him attorney fees. He contends it was unnecessary for him to appeal from the postjudgment orders on the attorney fees motions or to include those motions in the appellate record.

Allen's challenge to the attorney fees award creates something of a jurisdictional conundrum. The rule is that when a party wants to challenge both a final judgment and a postjudgment order granting or denying attorney fees, the party must file two separate notices of appeal: An appeal from the judgment alone will not include the attorney fees order. (*Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222; *Colony Hill v. Ghamaty* (2006) 143 Cal.App.4th 1156, 1171; *DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 43-44.)

However, if the judgment itself declares the prevailing party is entitled to recover attorney fees, but leaves the amount blank, the judgment is deemed to "subsume[]" a subsequent order setting the amount of fees, so that an appeal from the judgment confers appellate jurisdiction over a later order setting the amount of the award. (*Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993, 997 (*Grant*).) The holding in *Grant* has been described as limited to the situation in which entitlement to attorney fees was actually adjudicated by the original judgment, leaving only the question of amount to postjudgment litigation. (*DeZerega v. Meggs*, *supra*, 83 Cal.App.4th at p. 44.)

At oral argument, we invited the parties to submit letter briefs addressing *Silver v. Pacific American Fish Co., Inc.* (2010) 190 Cal.App.4th 688, 692 (*Silver*), a case neither party cited in the briefing. In *Silver*, the judgment provided that the cross-defendants "'shall recover . . . attorney fees and costs of suit,'" but left a blank for the amount. (*Ibid.*) The cross-complainant argued that such language in the judgment was sufficient to bring the case within *Grant* so that an appeal from the judgment included the trial court's later order awarding attorney fees to the cross-defendants. (*Silver*, *supra*, at p. 692.)

7

The Court of Appeal in *Silver* concluded *Grant* did not apply because "[n]otwithstanding the language in the judgment," it was clear the parties subsequently litigated in a separate postjudgment proceeding both the reasonableness of the amount of the attorney fees being claimed and the threshold issue of entitlement to fees. (*Silver, supra,* 190 Cal.App.4th at p. 692.) The judgment was based on a statement of decision providing that the cross-defendants, as the prevailing parties, "'may make an application for attorney's fees and costs by postjudgment motion for allowance of attorney's fees as an element of costs.'" (*Ibid.*) This language suggested the trial court intended, and the parties understood, the issue of attorney fees would be litigated in a separate postjudgment application. (*Ibid.*) In their motion for attorney fees, the cross-defendants argued the threshold issue of entitlement to fees under Code of Civil Procedure section 1032 and Civil Code section 1717, and the cross-complainant argued the cross-defendants were not the prevailing parties. (*Silver, supra,* at p. 693.) In the minute order granting the motion, the trial court adjudicated both entitlement to attorney fees and the reasonableness of the amounts claimed. (*Ibid.*) "Under these circumstances," the Court of Appeal stated, "[the cross-complainant] was not misled into believing that the trial court had adjudicated prior to or in the judgment the issue of entitlement to attorney fees." (*Ibid.*) The court concluded the cross-complainant could not rely on the appeal from the judgment to challenge attorney fees, but was required to file a separate, timely notice of appeal from the postjudgment order awarding attorney fees. (*Id.* at p. 694.)

The judgment in this case includes a statement that judgment be entered in favor of Polaris LLC, T. Jahangiri, and Larijani, and expressly stated they are to recover attorney fees. In contrast, in the statement of decision, the trial court stated only, "[t]he court will consider any motion for attorneys' fees." Therefore, from the judgment and the statement of decision it is not clear the trial court intended, and the parties understood, whether the issue of entitlement to attorney fees would be litigated in postjudgment proceedings. Although Allen brought his own postjudgment motion for

8

attorney fees, he might have done so out of caution and to preserve his rights in the event a court later would determine the judgment did not adjudicate entitlement to fees. We conclude *Silver* is distinguishable and we have jurisdiction over Allen's challenge to the award of attorney fees to Polaris LLC, T. Jahangiri, and Larijani.

B. *The Merits*

Allen argues the trial court erred by failing to award him attorney fees on Plaintiffs' cause of action for breach of contract. As Plaintiffs emphasize, none of the attorney fees motion papers or opposition papers is in the appellate record. Allen argues the motion papers and opposition papers are unnecessary because, based on the terms of the judgment alone, Allen was the "unqualified victor" on the breach of contract action against T. Jahangiri and Larijani. In effect, Allen argues that, as a matter of law, based on the jury verdict alone, he was entitled to recover attorney fees as the prevailing party on the breach of contract cause of action.

The basis for recovery of attorney fees is section 19.12 of the Operating Agreement, which states, "[i]n the event that *any dispute* between the Company and the Members or among the Members should result in litigation or arbitration, the *prevailing party in such dispute* shall be entitled to recover from the other party . . . reasonable attorneys' fees and expenses." (Italics added.)

Section 19.12 of the Operating Agreement is not limited to breach of contract, but was drafted broadly to include *any dispute*. A contractual attorney fees provision may be drafted broadly enough to support an award of attorney fees in noncontract actions. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 610; *Maynard v. BTI Group, Inc.* (2013) 216 Cal.App.4th 984, 991-992; *Lockton v. O'Rourke* (2010) 184 Cal.App.4th 1051, 1076; *Chinn v. KMR Property Management* (2008) 166 Cal.App.4th 175, 182, 183.) "If the attorney fee provision does encompass noncontractual claims, the prevailing party entitled to recover fees normally will be the party whose net recovery is

9

greater, in the sense of most accomplishing its litigation objectives." (*Maynard v. BTI Group, Inc.*, *supra*, at p. 992.)

The Complaint and the Cross-complaint raised several disputes between the parties which fell within section 19.12 of the Operating Agreement. The Cross-complaint asserted causes of action against Plaintiffs for declaratory relief; against Polaris LLC, T. Jahangiri, and R. Jahangiri for breach of oral contract and promissory estoppel; against Polaris LLC and T. Jahangiri for false promise fraud; and against T. Jahangiri and R. Jahangiri for intentional misrepresentation and negligent misrepresentation. The trial court granted nonsuit against Allen on the intentional misrepresentation and negligent misrepresentation causes of action. The jury found against Allen on the Cross-complaint's claim for breach of a contract to invest in Polaris LLC.

After trial of the equitable causes of action, the trial court found against Allen on the Cross-complaint's cause of action for promissory estoppel. Allen did not prevail on his declaratory relief cause of action. The court found that Allen had a 10 percent interest in Polaris LLC, while the Cross-complaint sought a declaration he owned a majority interest. Although the jury awarded T. Jahangiri and Larijani no damages for breach of contract, the jury awarded Polaris LLC $400,000 in damages against Allen for conversion. The jury awarded Allen no damages against T. Jahangiri, R. Jahanjiri, or Larijani.

The orders on the attorney fees motions confirm the judgment correctly determined that Polaris LLC, T. Jahangiri, and Larijani are entitled to recover attorney fees. In the order denying Allen's motion for attorney fees, the trial court found that "Plaintiff was the prevailing party." In the order granting Plaintiffs' motion for attorney fees, the trial court found that "Plaintiffs were clearly the prevailing party on their claim for breach of the operating agreement" and "Allen failed to prevail on any of the cross–claims." The court found, in effect, the jury did not award T. Jahangiri and Larijani

10

damages for breach of contract only because it had awarded Polaris LLC damages for conversion and had been instructed not to award duplicative damages.

Thus, under the record presented to us, the trial court did not err by finding Polaris LLC, T. Jahangiri, and Larijani were the prevailing parties "in the sense of most accomplishing [their] litigation objectives." (*Maynard v. BTI Group, Inc.*, *supra*, 216 Cal.App.4th at p. 992.) The judgment correctly stated they shall recover attorney fees.

## II.

## Nonsuit

A. *Background*

During the jury trial, Plaintiffs brought oral motions for nonsuit on Allen's causes of action for false promise fraud against Polaris LLC and T. Jahangiri, and for intentional misrepresentation and negligent misrepresentation against T. Jahangiri and R. Jahangiri. Plaintiffs argued Allen failed to present sufficient evidence to establish the elements of those causes of action.

In granting nonsuit on the intentional misrepresentation cause of action, the trial court stated: "I don't see any evidence of intent to deceive by anybody, frankly on either side. I think they have differences. They couldn't resolve them. There was some [contractual]-type differences, and I don't see any substantial evidence of intent to deceive of which would be necessary for a fraud cause of action." The trial court granted nonsuit on the negligent misrepresentation cause of action "for the same reasons." The court deferred ruling on the motion on the promissory estoppel cause of action because it is equitable. The trial court later found against Allen on the promissory estoppel cause of action. He does not challenge that decision in this appeal.

B. *Standard of Review*

We review an order granting nonsuit de novo, using the same standard as the trial court. (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291.) A

11

defendant is entitled to a nonsuit if the court determines, as a matter of law, the evidence presented by the plaintiff is insufficient to permit a jury to find in the plaintiff's favor. (*Ibid.*) The court must not weigh the evidence or consider witness credibility, must accept as true the evidence most favorable to the plaintiff, must disregard conflicting evidence, and must draw every reasonable inference—and resolve all presumptions, conflicts, and doubts—in the plaintiff's favor. (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1214-1215.) Evidence is legally insufficient when no substantial evidence exists tending to prove each element of the plaintiff's claim. (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 263; *Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veterans Affairs* (1998) 67 Cal.App.4th 743, 750-751.)

C. *Intentional Misrepresentation and Negligent Misrepresentation*

    1. *Elements*

        The elements of intentional misrepresentation are (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to defraud the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) The elements of negligent misrepresentation are (1) the defendant made a representation as to a past or existing material fact; (2) the defendant made the misrepresentation without reasonable ground for believing it to be true; (3) the defendant made the representation with intent to induce the plaintiff's reliance on it; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages. (*Wells Fargo Bank, N.A. v. FSI, Financial Solutions, Inc.* (2011) 196 Cal.App.4th 1559, 1573.)

2. *Evidence Supporting Causes of Action*

According to Allen, the following evidence supported his causes of action for intentional misrepresentation and negligent misrepresentation:

A business plan for Polaris LLC (exhibit No. 208) represented "Jahangiri Financing" would provide over $400,000 in financing. This financing was not provided. Allen testified he was concerned whether T. Jahangiri and R. Jahangiri would be able to invest in Polaris LLC. In June 2007, Allen approached R. Jahangiri and asked him to prove he had the funds to invest in Polaris LLC. Allen said, "show me. Show me that you have the funds to invest." He testified that "[p]rior to that there were no indications that funds were going to be infused into Polaris [LLC] or Polaris Imaging, and I wanted to confirm that they had certificates of deposit or funds in their bank accounts to fund these two companies."

In response, R. Jahangiri showed Allen the bank statements from Imaging Venture Group, Inc. (IVG), which comprised exhibit No. 254. Allen testified he saw those statements on June 12, 2007 and seeing the bank statements "renewed my faith that the Jahangiris were going to invest in the companies. They had the funds to invest, and actually had an intention to follow through what they promised me."[1]

Millions of dollars flowed in and out of the IVG bank account because IVG was in the business of selling high-priced medical equipment. R. Jahangiri explained, "money would come in and out, and the difference between the purchase price and my price for the equipment would be our profit. So a lot of money would come in here in connection with financing and selling this equipment." Due to an overpayment, the

---

[1] In his reply brief, Allen argues he testified: "[W]hen I looked at those records, clearly I saw transactions of $1.6 million dollars being deposited, bank balances moving up between one million to 11 million dollars, and frankly I looked at those statements and I said 'wow, I'm impressed. So you do have the funds.'" However, the trial court granted a motion to strike this testimony as nonresponsive, and Allen does not challenge that ruling.

13

account balances were inflated by several million dollars. R. Jahangiri testified: "Mike Allen knew that there was four and a half to $5 million dollars, I verbally told him, that was over wired [verbatim] by IBM, which was kind of unbelievable, and that money stayed in the account for upwards of six months."

### 3. *Intentional Misrepresentation*

Exercising de novo review, we reach the same conclusion as the trial court did on the intentional misrepresentation cause of action. Proof of fraudulent intent may be, and most likely can only be, evidence of the circumstances surrounding the transaction and of the relationship and interest of the parties. (*Miller v. National American Life Ins. Co.* (1976) 54 Cal.App.3d 331, 338.) Allen argues an inference of intent to defraud can be drawn from the fact that R. Jahangiri represented he and T. Jahangiri would provide over $400,000 in financing for Polaris LLC but failed to do so. But failure to act in accordance with a representation is not enough to prove fraudulent intent. (Cf. *Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, 30 ["'something more than nonperformance is required to prove the defendant's intent not to perform his promise'"].) In this case, a reasonable inference of intent to defraud could not be drawn from the evidence presented.

### 4. *Negligent Misrepresentation*

The trial court granted nonsuit on the negligent misrepresentation cause of action "for the same reasons" as granting nonsuit on the intentional misrepresentation cause of action. Allen is correct that intent to defraud is not an element of negligent misrepresentation. However, we may affirm a nonsuit on any ground advanced in the trial court if the opposing party was given notice of the defect and an opportunity to cure it. (*Jensen v. Hewlett-Packard Co.* (1993) 14 Cal.App.4th 958, 971; *Loral Corp. v. Moyes* (1985) 174 Cal.App.3d 268, 273.) Plaintiffs moved for nonsuit on the negligent misrepresentation cause of action on the ground Allen failed to meet his burden of proof on all of the elements.

14

Our de novo review of the record leads us to conclude Allen failed to produce legally sufficient evidence of the first two elements of negligent misrepresentation:  A misrepresentation of a past or existing material fact made without reasonable ground for believing it to be true.  Exhibit No. 208, the Polaris LLC business plan, represented that T. Jahangiri and R. Jahangiri would provide over $400,000 in financing.  Allen presented no evidence that statement was untrue when it was made or there was no reasonable ground for believing it to be true.  When Allen asked for confirmation that financing would be provided, R. Jahangiri provided him exhibit No. 254, the IVG bank statements.  No evidence was presented those banks statements were false.  Allen knew $4.5 million to $5 million reflected in those statements were for an overpayment and would have to be repaid.

### III.

### Injunctive Relief

Allen and Polaris Corp. argue the trial court erred by issuing an injunction requiring them to return these items:  (1) "The Polaris Medical Academy license, including but not limited to the CME certificate number and SCCT ID number"; (2) "Historical Google Analytics data related to the website"; (3) "16 chairs"; (4) 16 Del[l] computers and workstations"; and (5) "TeraRecon software with multiple user licenses."  Allen and Polaris Corp. argue there is no evidence in the record to show the existence of those items.  They objected to the proposed judgment on the ground those items do not exist and claim they were added to the judgment "for no apparent reason."

Plaintiffs do not respond to this argument other than to assert substantial evidence supported "[the trial court's] subsequent decision to order the return of the converted property."  Plaintiffs have provided no citations to the record showing that any of the five items described by Allen and Polaris Corp. do indeed exist.  Since Allen and Polaris Corp. cannot be compelled to return what does not exist, the injunctive relief portion of the judgment will be modified accordingly.

15

**DISPOSITION**

The judgment is modified in part by striking the following quoted matter:

1.  On page 5, lines 3-4, "1. The Polaris Medical Academy license, including but not limited to the CME certificate number and SCCT ID number."

2.  On page 5, line 19, "f. Historical Google Analytics data related to the website."

3.  On page 5, in line 20, "16 chairs."

4.  On page 5, in lines 22-23, "16 Del computers and workstations."

5.  On page 6, in lines 5-6, "TeraRecon software with multiple user licenses."

As modified, and in all other respects, the judgment is affirmed. Respondents shall recover costs incurred on appeal.

FYBEL, ACTING P. J.

WE CONCUR:

IKOLA, J.

THOMPSON, J.