OPINION
{¶ 1} Defendant-appellant Thomas L. Miller ("Thomas") brings this appeal from the judgment of the Court of Common Pleas of Henry County granting plaintiff-appellee Kathryn Miller's ("Kathryn") motion to relocate the minor child.
 {¶ 2} On December 31, 1998, Thomas and Kathryn were divorced. As part of the divorce settlement, the parties agreed that the minor child, Christian Miller ("Christi"), would not be relocated from Henry County or its adjacent counties without the consent of Thomas or the court. Kathryn also agreed that she would not have adult male guests overnight while Christi was present in the home. Thomas was required to pay spousal support to Kathryn for a period of five years or until her remarriage or cohabitation with a nonrelative male.
 {¶ 3} On May 5, 1999, Kathryn filed a motion to have Thomas held in contempt for failure to pay spousal support and requesting that the trial court grant her permission to move Christi to Indiana. On June 2, 1999, Thomas filed a motion to have Kathryn held in contempt for denial of visitation, overnight extended child care, relocation of Christi without his or the trial court's consent, and permitting an adult male to spend the night in the home while Christi was present. Thomas also filed a motion to modify the custody status and make him the residential parent. Finally Thomas filed a motion to have his spousal support terminated as of the date of Kathryn's remarriage and retroactively to the date she began to cohabitate with her new husband Thomas claimed that Kathryn began the cohabitation as of December 24, 1998, when the two purchased a house together in Indiana.
 {¶ 4} On June 16, 1999, the magistrate conducted an interview of Christi. The child expressed a desire to maintain time with both parents. The magistrate ordered that spousal support terminated upon the remarriage of Kathryn and the matter was set for mediation on the request of the parties. On August 4, 1999, a pretrial conference was held and the magistrate ordered that Christi be enrolled in the school district in Indiana without a hearing. A trial on the motions was held on April 24, 2000, and on July 10, 2000. On August 31, 2000, the magistrate issued a decision permitting Kathryn to move Christi to Indiana and reducing Thomas' visitation. The magistrate also found that Kathryn had not cohabitated with her new husband prior to the marriage. Both motions for contempt were denied. On November 1, 2000, Thomas filed objections to the magistrate's decision. Kathryn filed objections to the decision on November 15, 2000. On July 8, 2002, the trial court referred the matter back to the magistrate for additional findings of fact and conclusions of law. These were filed on November 4, 2002. On October 8, 2003, the trial court overruled the objections and adopted the magistrate's decision.[1] It is from this judgment that Thomas appeals and raises the following assignments of error.
The trial court committed reversible error when it granted[Kathryn] permission to relocate the child's residence to theState of Indiana as a temporary order on August 4, 1999, withoutevidentiary hearing, over [Thomas'] objection.
 The trial court committed reversible error by granting[Kathryn] permission to relocate the child's residence to theState of Indiana, against the agreed terms of the parties' agreeddivorce decree, when it failed to impose any burden of proof upon[Kathryn] to show that such relocation was in the child's bestinterest.
 The trial court's decision to permit relocation in the bestinterest of the child is against the manifest weight of theevidence.
 The trial court's determination that [Kathryn] did not cohabitwith her fiancé prior to their ceremonial marriage, entitling[Thomas] to termination of his spousal support obligation, isagainst the manifest weight of the evidence.
 The trial court's determination that [Kathryn] is not incontempt of court is against the manifest weight of theevidence.
 {¶ 5} The first, second, and third assignments of error argue that the trial court erred by granting Kathryn permission to relocate Christi to Indiana over the objection of Thomas.
(G)(1) If the residential parent intends to move to aresidence other than the residence specified in the parentingtime order or decree of the court, the parent shall file a noticeof intent to relocate with the court that issued the order ordecree. Except as specified in division (G)(2), (3), and (4) ofthis section, the court shall send a copy of the notice to theparent who is not the residential parent. Upon receipt of thenotice, the court, on its own motion or the motion of the parentwho is not the residential parent, may schedule a hearing withnotice to both parents to determine whether it is in the bestinterest of the child to revise the parenting time schedule forthe child.
R.C. 3109.051. This statute does not permit a trial court to prevent a residential parent from moving to a new location outside of the county or adjacent counties. The parent has a constitutional right to live anywhere in the country that she chooses and to relocate at will.
This court held in [Spain v. Spain (June 21, 1995), LoganApp. No. 8-94-30, unreported] that the trial court does not havethe authority to decide whether a residential parent has theright to move out of state when he or she files a motion torelocate. The motion to relocate merely gives the trial court theauthority to decide if the visitation schedule should berevised.
 Eaches v. Eaches (July 3, 1997), Logan App. No. 8-97-05, unreported. See, also, Thatcher v. Thatcher (Oct. 6, 1997), Mercer App. No. 10-97-08, unreported and Heitkamp v. Heitkamp
(Aug. 1, 2001), Mercer App. No. 10-01-03, unreported.
 {¶ 6} If the trial court denies the motion to modify the visitation schedule and the residential parent wishes to move a great distance, that parent could still move. However, that parent would be required to find a way to comply with the visitation schedule or could face charges of contempt. Obviously, if the residential parent were choosing to move to Florida, this move would present a significant challenge to complying with the visitation schedule. In that situation, the residential parent would probably have to choose to remain in the current location.
 {¶ 7} In this case, Kathryn notified the trial court that she wished to move to Indiana. The original visitation schedule provided for Thomas to have custody of Christi from 5:00 pm on Friday to 5:00 pm on Sunday every other weekend during the school year, from 7:00 pm on Friday to 7:00 pm on Sunday every other weekend during the summer, from 5:00 pm to 8:00 pm on Thursday, and six weeks visitation during summer vacation. The order also provided that Thomas would be offered first chance to provide extended child care, such as overnight periods. After the relocation, the visitation schedule was modified to give Thomas visitation from 5:00 pm on Friday to 5:00 pm on Sunday every other weekend and from 3:00 pm until 8:00 pm on the alternate Sundays. If there is a conflict with an alternate Sunday, the time would be moved to Thursday from 5:00 pm until 8:00 pm. Thomas was also granted week long visitations every other week during summer vacations and for one week during Christmas vacations.
 {¶ 8} In the first assignment of error, Thomas claims that the trial court erred by granting Kathryn permission to relocate as part of a temporary order. As discussed above, the trial court had no authority to prevent the relocation. At the time of the temporary order, no change in visitation was made from the original order. Thus, the trial court did not make any changes without holding a hearing. The first assignment of error is overruled.
 {¶ 9} Thomas argues in the second and third assignments of error that the trial court erred by finding that the move was in the best interests of the child. The real issue here is not whether the move was in the best interest of the child, but whether the change of circumstances caused by Kathryn's remarriage and move, would make a modification of parenting time and/or a modification of parental rights in the best interests of the child. R.C. 3109.051 and R.C. 3109.04.
The court shall not modify a prior decree allocating parentalrights and responsibilities for the care of children unless itfinds, based on facts that have arisen since the prior decree orthat were unknown to the court at the time of the prior decree,that a change has occurred in the circumstances of the child, thechild's residential parent, * * * and that the modification isnecessary to serve the best interest of the child. In applyingthese standards, the court shall retain the residential parentdesignated by the prior decree * * * unless a modification is inthe best interest of the child and one of the following applies:
* * *
(iii) The harm likely to be caused by a change of environmentis outweighed by the advantages of the change of environment tothe child.
R.C. 3109.04(E)(1)(a).
 {¶ 10} The trial court found that a change of circumstances in the life of the residential parent had occurred since she had remarried and moved to Indiana. Thus, the next question before the trial court was would a modification of the prior order be in the best interests of the child. The record indicates that the trial court considered the wishes of Christi. Christi indicated that she wanted to continue to live with Kathryn, that she wanted to see her father, that she wanted her parents to get along better, and that she wanted the midweek visitation scheduled for Thursday changed so that she would not miss softball practice. Christi also indicated that she wanted to alternate weeks with her mother and father during the summer. The trial court also gave substantial weight to the evidence presented by the psychologist. The psychologist interviewed both Kathryn and Thomas, as well as Christi. The recommendation of the psychologist was that
it is in Christi's best interest that she remain in theprimary parenting responsibility of the mother. I still do notbelieve a shared parenting arrangement can be effective betweenthese two. I strongly recommend that Tom and Kathy find amutually agreeable therapist in the Defiance area who can focuson communication facilitation for the two of them, and can act ina mediator-like fashion for them with regard to future disputesabout Christi's best interests. Lastly, I think it would behelpful if Tom continued in some form of longer termpsychotherapy in order to help relief (sic) his on-goingdepression and help him move on psychologically.
Psychological Evaluation for Best Interest of the Child, 17. The psychologist also testified at the hearing that he did not think it was in Christi's best interest to be moved into her father's household. Given this evidence, the trial court could reasonably conclude that although a modification of parenting time was in the best interest of the child, a modification of parental rights and responsibilities was not. The second and third assignments of error are overruled.
 {¶ 11} In the fourth assignment of error, Thomas claims that the trial court erred by finding that spousal support terminated on May 29, 1999. On May 30, 1999, Kathryn remarried, terminating her right to spousal support from Thomas. Thomas claims that Kathryn cohabitated with her fiancé prior to the wedding, which would have triggered the termination of spousal support. In support of this claim, Thomas provided evidence that Kathryn and her fiancé bought a house together, spent some nights together, opened joint bank accounts, and moved some possessions to the house in Indiana prior to the marriage. Kathryn presented evidence that she maintained a separate residence, that she continued to pay all of her bills, and that she did not provide support for her fiancé or receive support from him other than some items related to the wedding. Based upon this evidence, the trial court found that Kathryn was not cohabitating with her fiancé, but merely engaging in preparations for the wedding and her future married life. Since there is some evidence to support this finding, this court may not reverse it. The fourth assignment of error is overruled.
 {¶ 12} Finally, Thomas claims that the trial court erred by not finding Kathryn in contempt of court. "The decision of whether to find one in contempt of court rests in the sound discretion of the trial court and will not be overturned on appeal absent an abuse of that discretion." State v. Fortson,
8th Dist. No. 79501, 2002-Ohio-1. In this case, the trial court reviewed the evidence and made the following findings.
Technically, both parties acted in contravention of the priorcourt orders in this case and prima facie cases of contempt wereestablished. There is no doubt the Defendant failed to make therequired payments, that the Plaintiff allowed an unrelated maleto spend the night in the marital residence while Christian wasthere, and that the Plaintiff allowed the child to stay overnightwith friends or family members on at least one occasion since thetime of the divorce.
 The Defendant would argue that he legitimately believed hemade all the payments required.
 The Plaintiff is now married to the individual who spent thenight during the Thanksgiving holiday in 1998. The prohibitionagainst having male guests was a condition of her tenancy in themarital residence. It appears that the appropriate remedy forthat breach of the prior court order would have been for her tobe evicted from the residence. However, she moved from there byFebruary 1, 1999, and so this issue is moot.
 In addition, the Plaintiff explained that Christian had spentthe night with other relatives or at her friends' houses on a fewoccasions (e.g., the child spent the night with the Plaintiff'ssister's after going to a church activity with her and for onenight when the Plaintiff's current spouse's mother had surgery),some of which appeared to be prior to the filing of the finaljudgment entry of divorce. Although one might argue that it istechnically in breach of a court order, spending the night withher aunt or a friend seem like natural things for a child to doon occasion, so long as these outings are not planned during thetimes otherwise assigned for the child to be with her father. Inthis case, there was no claim that the times Christian stayedwith her aunt or with her friends interfered with the scheduledtimes she was to be with the Defendant.
 Therefore, it is not reasonable or appropriate to find eitherparty in contempt of court at this time. Nevertheless, bothparties are cautioned to comply with the court orders in thefuture.
November 4, 2002, Judgment Entry, 32-33.[2] Although the trial court found technical violations, it did not find that these violations arose to the level of contempt and were worthy of penalty. It is completely within the discretion of the trial court not to enter a finding of contempt. Given the evidence before it, the trial court did not err in refusing to enter contempt findings on either party even though both had technically violated the terms of the order. Thus, the fifth assignment of error is overruled.
 {¶ 13} The judgment of the Court of Common Pleas of Henry County is affirmed.
Judgment affirmed.
Shaw, P.J., concurs in judgment only.
Cupp, J., concurs in judgment only.
[1] This court is concerned about the length of time this matter took to be resolved. Matters involving potential custody issues should not be permitted to linger on the docket for over three years.
[2] This court notes that the prior court order does not prohibit Christi from spending the night with friends or other relatives. The order states that Kathryn must offer Thomas the first chance to provide extended child care.