[Cite as *Gregory v. Gregory*, 2019-Ohio-5210.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| JULIE C. GREGORY, n.k.a. JULIE O'NEILL, | : | APPEAL NO. C-180444 |
| | | TRIAL NO. DR-1201191 |
| | : | |
| Plaintiff-Appellee, | | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| DAVID S. GREGORY, | | |
| | : | |
| Defendant-Appellant. | | |


Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: December 18, 2019


*Julie C. Gregory,* pro se,

*Stagnaro Hannigan Koop, Co., L.P.A.,* and *Michaela M. Stagnaro,* for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} The use of a parenting coordinator is a relatively new concept in Ohio and Hamilton County. Parenting coordination is a novel and innovative way to manage high-conflict divorce cases by promoting communication between the parties and resolving ancillary parenting issues outside of the courtroom. Nevertheless, a balance must be struck between fulfilling the purposes of parenting coordination and protecting the due-process rights of the parties.

{¶2} In one assignment of error, David Gregory ("Father") argues that the trial court erred as a matter of law in overruling his objections to the parenting coordinator's decision in favor of Julie O'Neill ("Mother"). He presents two issues for review: (1) the trial court erred as a matter of law by overruling his objections without a hearing in violation of his due-process rights; and (2) the court's judgment overruling his objections was against the manifest weight of the evidence. Since we reverse the trial court's judgment and remand the cause on the basis of the due-process claim, we do not reach the question of whether the trial court's decision was against the manifest weight of the evidence.

### *Factual Background*

{¶3} The parties entered into a final decree of divorce and final shared-parenting plan in April 2013. Due to unresolved issues with the parenting plan, Father and Mother both agreed to the appointment of a parenting coordinator. Dr. Leslie Swift was appointed as parenting coordinator in July 2014 pursuant to Local Rule 2.11 of the Court of Common Pleas of Hamilton County, Domestic Relations Division ("Loc.R. 2.11"). After Swift's first term as parenting coordinator ended, both

2

parties agreed that they still needed a parenting coordinator, but Father argued that it should be someone other than Swift. The judge overruled Father's request, and in June 2016 Swift was appointed to another two-year term.

{¶4}   In April 2018, Swift entered a written decision resolving several parenting conflicts between the parties. Father filed an objection to Swift's decision and requested a hearing before the trial court. The court issued a judgment overruling Father's objections without a hearing in July 2018.

{¶5}   Father now appeals the court's overruling of several of his objections. First, he argues that two expenses that he had incurred should be considered expenses subject to reconciliation—the Sorribes Ear Treatment for the parties' son and the full purchase price of the son's laptop. Swift determined in his decision that the ear treatment was not subject to reconciliation because there was no definitive recommendation from the doctor for that treatment, and the son's therapist said there was no "impelling psychological need" for the treatment. Father paid $2,800 for the laptop. Swift allowed him to submit $2,300 for reconciliation, because he found Apple laptops "in the range of $2,300 with the same screen size, although fewer add-ons."

{¶6}   Second, Father requested that Mother not be permitted to use her vacation days on his Fridays with the children. Swift determined that Mother had taken 11 of her 18 vacation days on Father's regularly scheduled Fridays with the children. Swift ordered that the parties were only permitted to use eight vacation days on Fridays per year.

{¶7}   Third, Father requested that the parties' "one-on-one time" with the children be suspended since the son was not spending time with Mother. Swift

denied Father's request, saying that Mother and son were in therapy to improve their relationship, and that Mother had been extremely patient through an extended family-therapy process, so she deserved considerable deference in the matter.

### *Parenting Coordination*

{¶8} Many courts throughout Ohio are using parenting coordinators to help resolve recurring parenting disputes over issues such as visitation schedules and child drop-off times that often arise in "high-conflict families." *See* Sowald & Morganstern, *Baldwin's Ohio Practice Domestic Relations Law,* Section 6, 15 (4th Ed.2019).

{¶9} In 2014, The Ohio Supreme Court adopted Sup.R. 90-90.12, which provide standards that Ohio courts must follow when using parenting coordinators. Loc.R. 2.11 is modeled after those rules. When parties are at odds over details in a court-issued shared-parenting plan, Loc.R. 2.11 permits the trial court to appoint a parenting coordinator to monitor the court's orders, assist the parties in resolving disputes, and issue decisions when the parties are unable to agree. Parenting coordinators are not permitted to issue decisions on any substantive portions of a shared-parenting plan, such as changes to custody or the primary placement of a child. Loc.R. 2.11.

{¶10} The order appointing Swift as parenting coordinator limited him to issuing decisions on matters such as, but not limited to, minor holiday and vacation-schedule adjustments, pick-up and drop-off schedules, expense reconciliation, healthcare management, and purchasing of children's clothing. A party may file written objections to the parenting coordinator's decision and request a hearing before the trial court. However, whether a hearing is held is at the discretion of the

court. Loc.R. 2.11. Loc.R. 2.11 also provides that a parenting coordinator's decision goes into effect immediately upon its issuance, and remains in effect until ordered otherwise.

### *Due Process*

**{¶11}** Father argues that his due-process rights were violated because the court did not conduct a de novo review of the parenting coordinator's decision, which became immediately binding under Loc.R. 2.11.

**{¶12}** Under the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and Article I, Section 16, of the Ohio Constitution, parties are entitled to reasonable notice of judicial proceedings and a reasonable opportunity to be heard. *Ohio Valley Radiology Assocs., Inc. v. Ohio Valley Hosp. Assn.*, 28 Ohio St.3d 118, 125, 502 N.E.2d 599 (1986). The fundamental requirement of due process in any proceeding is notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).

**{¶13}** The case law on parenting coordination in Ohio is sparse, and we have found no cases dealing with the due-process concerns raised by Father. So, we turn to other states that have dealt with the issue of parenting coordination and due process.

**{¶14}** First, the appointment of a parenting coordinator has been held to not be an improper delegation of judicial decision-making authority as long as the trial court empowers the parenting coordinator to resolve only ancillary custody disputes, the parties can appeal decisions of the parenting coordinator to the trial court, and

the trial court conducts a de novo review. *Yates v. Yates*, 963 A.2d 535, ¶ 13-15 (Pa.Super.2008).

{¶15} In *A.H. v. C.M.,* 58 A.3d 823, 824 (Pa.Super.2012), the mother filed an objection to the parenting coordinator's decision and requested a de novo hearing before the trial court. At the time, Pennsylvania provided for parenting coordination by local rule, similar to Ohio.[1] *Id.* at 826. During a custody session, the trial court heard brief argument on mother's objection, limiting her to four minutes to present her case before denying her objection and her request for a de novo hearing. *Id.* The superior court found that the trial court's denial of mother's request for a de novo hearing infringed on her due-process rights. *Id.* at 827.

{¶16} In *Bower v. Bournay-Bower*, 469 Mass. 690, 15 N.E.3d 745 (2014), the Massachusetts Supreme Court addressed judicial review of a parenting coordinator's decision. The court's order provided that the parenting coordinator's decisions were binding unless either party "comes to court *before* the decision is to take effect, and obtains a contrary order." (Emphasis in original.) *Id.* at 704. This provision meant that meaningful judicial review was unavailable for any decision of the parenting coordinator that would take effect before the party could obtain review by the trial court. *Id.* The court held that the trial court lacked authority to appoint the parenting coordinator due in part to the binding nature of the coordinator's decisions and the lack of meaningful judicial review. *Id.* at 701-706.

{¶17} The Nevada Supreme Court determined that there was no impermissible delegation of judicial authority where the parenting coordinator's authority was limited in scope and subject to judicial review. *Harrison v. Harrison*,

---

[1] Pennsylvania has since eliminated parenting coordination.

132 Nev. 564, 573, 376 P.3d 173 (2016).  The parenting coordinator's authority was limited to resolving nonsubstantive issues, and the decisions of the parenting coordinator were *not immediately effective*.  (Emphasis added.)  *Id.* at 175, 179.

{¶18}  This court recognizes that unlike magistrates, who can issue decisions on substantive matters, a parenting coordinator's authority is limited to ancillary parenting issues.  The immediate effect of their decisions carries less risk of affecting a substantial right of a party prior to judicial review than if a magistrate's decision was to be given immediate effect. Also, one of the purposes of a parenting coordinator is to assist the parties with day-to-day issues and issue timely decisions in order to keep the parties out of court.  Sowald & Morganstern at Section 6, 15.  However, as stated at the outset of this opinion, we must balance the practical considerations of parenting coordination with the due-process rights of the parties.

{¶19}  We turn now to the current case.  The trial court noted in its judgment that the local rules provide no standard of review for trial courts reviewing objections to a parenting coordinator's decision.  The court applied the standard of review applicable to magistrate decisions under Civ.R. 53(D)(4)(d), which requires the court to conduct an "independent review."  As the trial court noted, applying any standard of review other than an independent-review standard would mean that the trial court would afford greater deference to a parenting coordinator's decision than to one of the court's own magistrate's decisions.

{¶20} "Independent review" means de novo review.  *Barrientos v. Barrientos*, 196 Ohio App.3d 570, 2011-Ohio-5734, 964 N.E.2d 492, ¶ 4 (3d Dist.).  Thus, when reviewing a magistrate's decision, the trial court must independently review the record and make its own factual and legal findings.  *Id.*

{¶21} Civ.R. 53(D)(3)(b)(iii) provides that factual objections to a magistrate's decision

> shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. With leave of court, alternative technology or manner of reviewing the relevant evidence may be considered.

{¶22} The rule is well settled in magistrate cases that where the appellant fails to file a copy of the transcript with his objections, the trial court presumes that the magistrate's factual findings are correct. *E.g., In re I.W.,* 1st Dist. Hamilton No. C-180095, 2019-Ohio-1515, ¶ 8.

{¶23} Thus, where a transcript of the hearing before the magistrate actually exits, and appellant does not submit it to the trial court, it is appellant's omission that fails to make the transcript a part of the record for review.

{¶24} But here is where parenting coordinator decisions diverge from magistrate decisions. A magistrate's decision is based on a judicial proceeding—a hearing with sworn testimony. A parenting coordinator's decision is not based on any sort of hearing or judicial proceeding. Therefore, a party objecting to a parenting coordinator's decision has no transcript to submit to the trial court. The first opportunity for a transcript to be developed from which factual findings can be made is when a party files objections with the trial court.

{¶25} In this case, no transcript existed because no hearing had occurred. Because no transcript was available, the trial court found that it was required to accept Swift's factual findings as true. Father argues that in order to provide

independent review, the trial court should have held a hearing on the objections. We agree.

**{¶26}** Due process requires meaningful and independent judicial review of a parenting coordinator's decision. The lack of an independent review of Swift's factual findings, and the fact that Swift's decision was immediately effective and not stayed by Father's objections, combined to deprive Father of meaningful and independent judicial review of his objections, and therefore deprived him of due process. Because the trial court erred in overruling father's objection to the parenting coordinator's decision without a hearing, his sole assignment of error is sustained.

### *Conclusion*

**{¶27}** For the foregoing reasons, we reverse the judgment of the trial court and remand the cause to the trial court with instructions to conduct a hearing on Father's objections.

Judgment reversed and cause remanded.

**ZAYAS, P.J.,** and **WINKLER, J.,** concur.

Please note:
 The court has recorded its own entry on the date of the release of this opinion.