[Cite as *Dexter v. Fairfield*, 2024-Ohio-6080.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | | |
|---|---|---|---|
| LISA DEXTER, | : | APPEAL NO. | C-240249 |
| | | TRIAL NO. | DR-1902284 |
| Plaintiff-Appellant, | : | | |
| vs. | : | | |
| | | *O P I N I O N* | |
| LEIF FAIRFIELD, | : | | |
| Defendant-Appellee. | : | | |


Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 31, 2024


*Goldberg Evans, LLC*, and *Leah A. Darpel*, for Plaintiff-Appellant,

*Zachary D. Smith, LLC*, and *Zachary D. Smith*, for Defendant-Appellee.

**WINKLER, Judge.**

**{¶1}** Plaintiff-appellant Lisa Dexter ("mother") appeals the decision of the trial court overruling her motions for contempt against defendant-appellee Leif Fairfield ("father") for failing to reimburse her for child-related expenses as provided for in their shared-parenting plan and her motion to reallocate fees paid to a parenting coordinator ("PC"). We find no merit in her three assignments of error, and we affirm the trial court's judgment.

### *Factual Background*

**{¶2}** The parties' decree of dissolution and final decree of shared parenting of their two children were entered on January 29, 2020. On December 16, 2020, after numerous disputes about parenting, the parties agreed to the appointment of a PC for a term of six months. Several motions were filed after the PC's first decision. Nevertheless, on February 2, 2022, the parties agreed to extend the PC's term for another six months. The PC's fees were to be shared equally by the parties.

**{¶3}** Initially, the parties' shared-parenting plan addressed the issue of reimbursements between the parties for expenses relating to the children. That plan was modified by the PC's decision dated May 12, 2022. It stated,

> Within 30 days after payment of a child related expense, each parent shall upload the receipt and statement of costs of the agreed upon activities, or educational expenses incurred and proof of payment to the other parent, although the parent actually receiving a bill shall pay it. Failure by either parent to enter a child related expense within 30 days of payment will result in that parent waiving the right to be reimbursed for that child related expense.

**{¶4}** It further stated,

Reimbursement, as provided herein for all bills paid by a parent, shall be paid, or arrangements agreed upon, to the appropriate parent within thirty (30) days of his or her receipt of a copy of the bill and proof of payment. Failure of either parent to reimburse the other within thirty days of his or her receipt of a copy of the bill and proof of payment shall result in a fine of $15 per day until the child related expense is paid. . . . For example: If Father owes Mother $50 for an expense reimbursement and he paid on day 34 he will owe Mother an additional $60.00 as a penalty for his late payments.

Neither party objected to this decision.

{¶5} On September 8, 2022, the PC issued another decision addressing a number of parenting issues, including allocation of various child-related expenses between the parties. The PC also stated, "The parties continue to have parental conflict and are frequently unable to make joint decisions about their children. . . . Without the assistance of a third party, this PC anticipates that the parties will engage in costly litigation over parenting issues." Therefore, the PC ordered the parties to continue in parenting coordination for an additional term of six months. After that period, the PC could determine whether parental coordination had been effective and if it should continue for another period.

{¶6} Mother filed objections to the PC's decision, in which she objected to "continuance of the Parenting Coordinator." She contended that father was not abiding by the terms of the PC's decisions. She stated that "[t]here is a pattern of Father not following PC decisions, and therefore keeping a PC on the case is not effective." Subsequently, those objections were sustained. The court found that there were multiple occasions where father had failed to comply with the PC's decisions. It

3

stated that the PC process "is utterly worthless and a waste of money if either party routinely ignores the PC decisions."

{¶7} Mother then filed a motion to reallocate PC fees, as well as a motion for contempt and to modify parenting time. At the hearing on those motions, the PC testified. She stated that disputes over expenses were a recurring issue. She also stated that both parties are "wonderful parents," but they have drastically different parenting styles.

{¶8} Specifically, the PC said that expenses were "a large thorn in [mother's] side because she was the one that was usually paying those expenses and not getting reimbursement." She added that "most typically what we're seeing was [mother] was the one that pays the expenses, and [father] was historically late in making those expenses back or would dispute some of those expenses." Because father had failed to reimburse mother for expenses, mother experienced frustration and financial distress. The reasoning behind the late-payment provision was that the PC "wanted to put a little more weight in making sure that [mother] was repaid in a timely manner."

{¶9} The PC noted that many of the expenses that were not paid were recurring expenses that would not be new or confusing from month to month. Further, she testified that father had never addressed the late-payment charges with her, he never indicated that he had any hardship paying the late fees or that he should not be charged a late fee for not paying the expenses. Nevertheless, she said that the disputes about the reimbursement of expenses were a "communication issue" and not an "expense issue."

{¶10} The PC added that in every PC case, expenses are an issue. In her experience, expenses were one of the easier issues to address because the shared-parenting plan detailed what is a shared expense and other specifics as to how those

expenses are reimbursed. The "big issues" were "[t]herapy; what the kids do during the summer; what medications are they on; and how the parties are communicating."

{¶11} Mother testified and identified a spread sheet she had prepared showing the expenses for which she sought reimbursement from father. She said that father refused to pay expenses that the PC had ordered him to pay or he paid those expenses late. She provided receipts and noted the payments that father had actually made, and she identified an accounting of the late fees she claimed were owed by father. She believed that the PC fees could have been drastically reduced if both parties had followed the PC's decisions.

{¶12} Mother said that she keeps records of every single expense sent to father and the reimbursement for the expenses. She testified that his failure to reimburse her for those expenses was financially challenging and emotionally taxing. Further, father never reached out to her to indicate a reason for his failure to pay or that he was experiencing financial hardship.

{¶13} Father testified that an ongoing issue had been mother's failure to provide receipts or other documentation at the time the expense was submitted, resulting in him declining to pay until documentation was provided. He said that he had brought the issue of missing receipts to the PC's attention. He disputed the necessity of some of the items that mother presented for reimbursement, such as those he viewed as duplicative. He paid some expenses to avoid "having another fight." Nevertheless, when he was questioned about reimbursement for specific expenses that he had not paid, he said that he had missed those expenses, that they were not paid due to an unintentional oversight, or that he thought he had already paid it.

{¶14} After reviewing mother's list of expenses, father said that he had paid most of them as of the date of the hearing, so the only issue that remained was the late

fees. Mother acknowledged that as of the day of the hearing, she had been reimbursed for all of the child-related expenses. But he had not paid any of the late fees, which she said were incurred due to his failure to timely reimburse her for expenses.

{¶15} The magistrate denied mother's motion for contempt. He stated, "Based on evidence and testimony presented at hearing of this matter, the Court cannot make a determination that overdue monies remaining materially outstanding for payment as of the date of hearing." He noted that the only unaccounted for expense was for $250, and stated, "[W]hile this amount may not seem to be *de minimus* in nature, it pales in scope when taken in light of the sheer number and amount of items flowing back and forth between these parties on a routine basis."

{¶16} The magistrate acknowledged that father had "demonstrated a pattern of late payments over contested expenses." But mother's own exhibit "demonstrated that the expenses in question are eventually paid and that no material outstanding balance existed as of the date of hearing." Nevertheless, the magistrate stated that those findings did not excuse father for failure to comply with the court's orders or incurring late fees, and "should not be interpreted as condoning any such behavior."

{¶17} The magistrate also denied mother's motion for reallocation of PC fees. He stated, "While the issue of delayed payment of expenses may have been a frequent topic of discussion between the parties and the Parenting Coordinator, the itemized billing demonstrates that these discussions were typically secondary to the ongoing strife between the parents regarding the medical needs of the children." Further, he said that the PC "testified that she had specifically considered the issue of reallocation of Parenting Coordinator fees on multiple occasions and had elected not to pursue such a course of action on all such occasions."

{¶18} Finally, the magistrate did not award attorney fees or costs at that time.

He stated that "each party shall be responsible for their individual attorney fees as related to this matter."

**{¶19}** Mother filed objections to the magistrate's decision. She objected to the magistrate's denial of her motion for contempt. She stated, "Mother specifically objects to the finding of the Magistrate that the Court could not make a determination that overdue monies remain 'materially' outstanding for payment as of the date of the hearing." She contended that at the date of the hearing, father owed her approximately $11,733 for both child-related expenses and for late fees. She noted that the PC had testified that father was "chronically tardy in making reimbursement and/or objecting to expenses claimed by Mother."

**{¶20}** Mother also objected to the magistrate's finding that father's failure to pay expenses and late fees was not "material" or must be "material" for the court to find him in contempt. She said that father's "noncompliance with the Decision of the Parenting Coordinator is a *violation* of this Court's order." (Emphasis in original.)

**{¶21}** Finally, mother objected to the magistrate's denial of her motion for reallocation of the PC fees. Specifically, she objected to the finding that the parties' dispute over expenses was a "secondary" matter. She contended that it was a continuing issue between the parties that was "evidenced by specific provisions in the Parenting Coordinator's Decision, regarding the late fees and timely payment of expenses."

**{¶22}** The trial court overruled mother's objections to the magistrate's decision. It found that the magistrate's decision was supported by competent, credible evidence, and it adopted the magistrate's decision as the court's judgment. This appeal followed.

7

### *Parenting Coordinators*

**{¶23}** Before we address the merits of mother's assignments of error, we explain the purpose of using a PC and the procedure used when a PC is appointed. The use of a PC is a relatively new concept in Ohio and Hamilton County. *Gregory v. Gregory*, 2019-Ohio-5210, ¶ 1 (1st Dist.). It is a "novel and innovative way to manage high-conflict divorce cases by promoting communication between the parties and resolving ancillary parenting issues outside the courtroom." *Id.*

**{¶24}** When parties are at odds over details in a court-issued shared-parenting plan, Loc.R. 2.11 of the Court of Common Pleas of Hamilton County, Domestic Relations Division ("Loc.R. 2.11") permits the trial court to appoint a PC to monitor the court's order, assist the parties in resolving disputes, and issue decisions when the parties are unable to agree. *Id.* at ¶ 9. A PC's authority is limited to ancillary parenting issues. *Id.* at ¶ 18. PCs are not permitted to issue decisions on any substantive portions of a shared-parenting plan, such as changes to custody or primary placement of a child. *Id.* at ¶ 9.

**{¶25}** A PC's decision goes into effect immediately when it is issued and remains in effect until ordered otherwise. *Id.* at ¶ 10. The parties may file written objections to the PC's decision and request a hearing before the trial court. *Id.*

### *Contempt*

**{¶26}** In her first assignment of error, mother contends that the trial court erred in denying her motion for contempt. She argues that the trial court improperly stated that father's contempt must be material, and that payments were outstanding for payment as of the date of the hearing. This assignment of error is not well taken.

**{¶27}** As a preliminary matter, father argues that mother is not entitled to

review of the trial court's denial of her motion for contempt. Generally, a ruling on a contempt motion does not constitute a final order absent a finding of contempt and the imposition of sanctions. *Mike McGarry & Sons, Inc. v. Constr. Resources One, LLC*, 2018-Ohio-528, ¶ 108 (6th Dist.). The Ohio Supreme Court has held that absent a showing of prejudice to the party making the contempt motion, contempt is essentially a matter between the court and the person who disobeys a court order. Therefore, there is no right of appeal from the dismissal of a contempt motion when the party making the motion is not prejudiced by the dismissal. *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 16-17 (1988).

**{¶28}** But the Court also stated, "A special category of contempt cases, in which appeals have been allowed, are those in domestic relations matters." *Id.* at 17, fn. 3. "In these cases, the motion for contempt was directed at a party to the action, not a non-party witness, and although the opinions are not always clear in this respect, the possibility of prejudice was present." *Id.* Therefore, we hold that the trial court's judgment declining to find father in contempt was a final, appealable order.

**{¶29}** A person guilty of "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer" can be punished for contempt. R.C. 2705.02(A). To establish a prima facie case of civil contempt, the moving party must prove the existence of a court order and the nonmoving party's failure to comply with the terms of that order. *Morrison v. Walters*, 2023-Ohio-2887, ¶ 19 (1st Dist.); *Wolf v. Wolf*, 2010-Ohio-2762, ¶ 4 (1st Dist.). A finding of civil contempt requires clear and convincing evidence that the alleged contemnor failed to comply with the court's orders. *Morrison* at ¶ 19.

**{¶30}** Proof of a "purposeful, willing or intentional" violation of a court order is not a prerequisite to a finding of contempt. *Pugh v. Pugh,* 15 Ohio St.3d 136, 140

(1984). "If the dictates of the judicial decree are not followed, a contempt citation will result." *Id.*, quoting *Pedone v. Pedone*, 11 Ohio App.3d 164, 165 (8th Dist. 1983).

**{¶31}** Nevertheless, a trial court's decision granting or denying a motion for contempt will not be reversed absent an abuse of discretion. *In re G.W.*, 2024-Ohio-1551, ¶ 13 (1st Dist.); *Wolf* at ¶ 4. The trial court is empowered to "determine the kind and character of conduct that constitutes contempt." *Bohannon v. Lewis*, 2022-Ohio-2398, ¶ 47 (1st Dist.), quoting *Fisher v. Fisher*, 2018-Ohio-2477, ¶ 25 (7th Dist.).

**{¶32}** The magistrate stated that the purpose of the contempt power is "to compel a noncompliant party into compliance." While it was undisputed that father had engaged in a pattern of late payments over contested expenses, the evidence presented at the hearing showed that the expenses in question had been paid as of the date of the hearing. Even mother's own evidence showed no existing balance as to the expenses. The trial court may consider whether a party had attempted to comply with the order in question. *Wolfe*, 2010-Ohio-2762, at ¶ 4 and 7 (1st Dist.).

**{¶33}** The only issue remaining was the payment of the late fees. The magistrate did not agree with mother's calculation of the amount of late fees due. He stated, "The tracking by [mother] of individual line items during periods where [father] was routinely paying expenses, coupled with the astoundingly-inflated 'late fees' of the three items allegedly remaining unpaid as of the date of hearing smacks of pretense to continue the ongoing and incessant litigation of this matter." The finding was supported by the evidence. A trial court is within its discretion to refuse to make a finding of contempt even when a party has technically violated an order. *Miller v. Miller*, 2004-Ohio-2358, ¶ 12 (3d Dist.).

**{¶34}** Finally, mother argues that the trial court improperly relied on the parties' lack of communication with each other as a basis for denying mother's motion

10

for contempt. The magistrate simply pointed out that a lot of the issues discussed at the hearing could have been avoided if the parties had "communicated with one another in a reasonable manner." He admonished the parties that continued "friction" between them would "further complicate their ability to appropriately parent their children." Those statements were not the reason for the failure to find father in contempt.

**{¶35}** We hold that the trial court's failure to grant mother's motion for contempt was not so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. *See Blakemore v. Blakemore*, 5 Ohio St.2d 217, 219 (1983); *Hollingsworth v. Time Warner Cable*, 2006-Ohio-4903, ¶ 26 (1st Dist.). Therefore, we overrule mother's first assignment of error.

### *Reallocation of Fees*

**{¶36}** In her second assignment of error, mother contends that the trial court erred in denying mother's motion for reallocation of PC fees. She argues that the trial court improperly denied the motion on the basis that the parties' dispute over expenses is a "secondary" matter. This assignment of error is not well taken.

**{¶37}** Post-decree motions in domestic-relations matters are reviewed for an abuse of discretion. *Boyd v. Boyd*, 2022-Ohio-4775, ¶ 35 (10th Dist.); *May v. May*, 2022-Ohio-4091, ¶ 19 (5th Dist.). In denying mother's motion, the magistrate stated,

> Based on the evidence presented at the hearing on this matter, the Court
> notes that the itemized billing statement by the Parenting Coordinator
> demonstrates individual communication with PC by both parties. While
> the issue of delayed payment of expenses may have been a frequent
> topic of discussion between the parties and the Parenting Coordinator,
> the itemized billing demonstrates that these discussions were typically

secondary to the ongoing strife between these parents as regarding the medical needs of the children.

These findings were supported by the evidence.

**{¶38}** The PC testified that expenses are one of the "easier issues" to address when working as a PC, and that the "big issues" were therapy, medications, communications and other issues. When she was asked about whether a billing entry was related to a dispute over expenses, she stated that the parties commonly presented "ten issues at a time." She added that it was a simple issue that the parties could "resolve and move forward." "There were a lot of layers and a lot of issues kind of being brought up all at the same time."

**{¶39}** She further stated that "we were making more important decisions about how we're medicating the children, who is their pediatrician, what therapist do they go see." While she knew that the expenses issue was frustrating for mother, "it was the easiest issue the parties had."

**{¶40}** The PC testified that she had specifically considered the issue of allocation of her fees on multiple occasions, but she had elected not to pursue that course of action. As noted by the court, the "one instance where the parties were able to stay out of Court (for a period of approximately six months) was during a period in which the Parenting coordinator was most active in resolving their differences."

**{¶41}** Under the circumstances, we cannot hold that the trial court's decision denying mother's motion to reallocate the PC's fees was so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion. *See Blakemore*, 5 Ohio St.3d at 219; *Hollingsworth*, 2006-Ohio-4903, at ¶ 26 (1st Dist.). Consequently, we overrule mother's second assignment of error.

### *Attorney Fees*

**{¶42}** In her third assignment of error, mother contends that the trial court erred by denying her motion for attorney fees. She argues that the trial court failed to consider father's conduct. This assignment of error is not well taken.

**{¶43}** In any post-decree motion or proceeding that arises out of an action for divorce or dissolution, "a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." R.C. 3105.73(B). In determining whether an award is equitable, a court may consider the parties' income, the conduct of the parties, and any other relevant factors that the court deems appropriate, except for the parties' assets. *Id.* We review the trial court's decision for an abuse of discretion. *Iranpour-Boroujeni v. Emami*, 2024-Ohio-2546, ¶ 134 (1st Dist.); *Morrison*, 2023-Ohio-2887, at ¶ 12 (1st Dist.).

**{¶44}** Mother contends that father's failure to reimburse mother for expenses in a timely manner was a chronic issue that required frequent court intervention. While noncompliance with court orders can be a justification for an award of attorney fees, courts may consider other factors. *See Iranpour-Boroujeni* at ¶ 137.

**{¶45}** We cannot say that the trial court failed to consider father's conduct. The magistrate's decision discusses father's conduct extensively. It also notes the PC's testimony that expenses were not the primary issue between the parties, but it was the easiest to resolve. Despite her involvement in addressing disputes over expenses with the parties, she did not feel that it was appropriate to reallocate the division of her fees. Though the magistrate admonished father about his failure to timely pay expenses, he ultimately did not find him in contempt.

**{¶46}** Further, the magistrate did not foreclose the issue of attorney's fees. He stated that "[N]o attorney fees or costs are awarded *at this time*." (Emphasis added.)

**{¶47}** Even if we would have decided the issue differently, an appellate court

13

may not substitute its judgment for that of the trial court. *Iranpour-Boroujeni*, 2024-Ohio-2546, at ¶ 139. We cannot hold that the trial court's decision on attorney fees was so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. *See Blakemore*, 5 Ohio St.3d at 219; *Hollingsworth*, 2006-Ohio-4903, at ¶ 26 (1st Dist.). Consequently, we overrule mother's third assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**BOCK, P.J.,** and **CROUSE, J.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion.