Filed 8/29/25  Marriage of Khym and Miner CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of ESTHER KHYM and BRIAN MINER | |
| ESTHER KHYM, <br>     Respondent, <br> v. <br> BRIAN MINER, <br>     Appellant. | A170007 <br><br> (San Mateo County Super. Ct. No. 17FAM01084-A) |

During their divorce proceedings, Brian Miner and Esther Khym agreed to share joint legal custody of their only child and stipulated to use a parenting coordinator to resolve scheduling disputes and other custodial conflicts.  Miner now challenges the trial court's appointment of the parenting coordinator that Miner recommended, as well as the coordinator's subsequent orders.  We affirm.

## BACKGROUND

Miner and Khym married in 2013, and their marital status terminated in 2021.  They share joint custody of their only child pursuant to a June 2022 "Stipulation and Order re Custody and Visitation (Amended)" (the custody order).  (Capitalization omitted.)

1

The custody order provides, in relevant part, for the appointment of a "Parenting Coordinator . . . for a total three-year term," consisting of three, 12-month terms. At the conclusion of each 12-month period, the parties "may elect, by mutual agreement," to renew the parenting coordinator's term or appoint a new coordinator. "If the parties cannot agree to a Parenting Coordinator after each twelve (12) month term, they shall submit three names to the Court for decision."

The custody order authorizes the parenting coordinator "to make orders and/or recommendations consistent with the stipulation for their appointment," which is attached to the custody order as Exhibit A (the parenting coordinator stipulation).[1] This parenting coordinator stipulation authorizes the parenting coordinator to issue orders "effective when made" that resolve "disputes relating to the clarification and implementation of" the custody order. For other decisions, such as parental or child participation in "medical and/or psychological assessments, evaluations, [and] treatments," the parenting coordinator makes "recommendations," which are subject to a 10-day objection period and, if an objection is made, de novo review by the court.

As is reflected by the executed parenting coordinator stipulation, Miner and Khym agreed to the appointment of an initial parenting coordinator, but at the June 2023 expiration of his first 12-month term, Miner declined to renew the appointment. Miner and Khym could not agree on a new parenting coordinator, so they each recommended three coordinators for the court's consideration.

---

[1] The parenting coordinator stipulation is titled "Stipulation and Order Regarding Appointment of Parenting Coordinator," and, per Miner, is "a very lightly modified version" of Marin County Superior Court local form FL-014.

Khym's recommendations included Andrea Palash, and Miner's recommendations included David Fink. Although Khym's recommendations did not contain disclosures, Miner's recommendations disclosed that Fink had worked with Khym's counsel "as a neutral previously, either as a mediator, temporary judge, or parenting coordinator." Fink also had a "professional" relationship with another partner at the same law firm but "d[id] not feel that any of these prior interactions would in any way compromise his ability to serve as a neutral parenting coordinator in this matter."

The court directed each party strike two names from the other's list and, "[a]fter conclusion of a judicially supervised conference" in December 2023, the court ordered: "Parties will select Andrea Palash as the parent coordinator if her hourly rate is $650.00/hr or less," otherwise, "the parties will select David Fink."

On January 19, 2024, after being contacted by the parties, Palash e-mailed her services agreement and statement of policies and procedures along with her "disclosures."[2] On January 24, Miner filed a "Notice of Disqualification" of Palash pursuant to the California Arbitration Act (CAA) (Code Civ. Proc., § 1280 et seq.[3]); Palash thereafter declined to serve as the parenting coordinator.

Consistent with the court's December 2023 order, Khym's counsel then contacted Fink, asking him to serve as parenting coordinator; Miner also

---

[2] Palash disclosed she had known Khym's trial counsel "professionally" and "socialized" with her "at professional functions"; Palash also considered another partner at Khym's counsel's firm "a friend" with whom she had socialized "at and outside of professional functions." Palash represented she had no "reason to doubt [her] ability to be impartial" and expressed "no bias or prejudice toward or in favor of" counsel or the parties.

[3] Further undesignated statutory references are to the Code of Civil Procedure.

requested "a disclosure statement." On February 6, 2024, Fink supplemented his earlier disclosures included within Miner's recommendation to the court; on February 13, Miner filed a notice of disqualification "with cause" pursuant to the CAA because Fink's disclosures "noted five (5) current or recent assignments" in which he acted as a neutral for Khym's counsel's firm.[4] The supplemental disclosures also stated that during his term as parenting coordinator, Fink "will continue to consider accepting other cases."

On the same date, Khym filed an application for an ex parte order confirming Fink's appointment as parenting coordinator. The following day, on February 14, Miner filed a 189-page opposition.

On February 16, 2024, the court granted Khym's application, "adopt[ing] and enter[ing] as this Court's order" the parenting coordinator stipulation appointing Fink as the new parenting coordinator. On February 20, the court filed a copy of the form parenting coordinator stipulation naming Fink and signed by the court but not Miner or Khym.

On March 18, 2024, Miner filed a notice of appeal from the February 16 ex parte order and the February 20 appointment of Fink.[5]

## DISCUSSION

On appeal, Miner challenges Fink's appointment as parenting coordinator and his subsequent orders; Miner further asks us to invalidate the parenting coordinator stipulation as a whole. Miner also asserts error in

---

[4] As the basis for disqualification in the trial court, Miner cited a provision of the CAA that allows for disqualification of "one court-appointed arbitrator without cause in any single arbitration"; any subsequent petition for disqualification must be supported by "a showing of cause." (§ 1281.91, subd. (b)(2).)

[5] Fink's one-year appointment expired in February 2025. At oral argument, Miner represented that the court had made subsequent orders with respect to the parenting coordinator that are not before us.

4

the trial court's continuance of his request for attorney's fees, which occurred after Miner filed the underlying notice of this appeal. We lack jurisdiction to consider Miner's attorney's fee argument and reject his other claims.

## I. Attorney's Fees

" ' "[W]here several judgments and/or orders occurring close in time are separately appealable (e.g., judgment and order awarding attorney fees), each appealable judgment and order must be expressly specified—in either a single notice of appeal or multiple notices of appeal—in order to be reviewable on appeal." ' " (*Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 173, quoting *DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 43.)

On June 20, 2023, Miner filed a request for attorney's fees; the hearing was continued in October 2023, and the court ultimately awarded fees in September 2024. In March 2024, Miner filed notice of this appeal, but the notice does not mention his June 2023 attorney's fees request or the October 2023 continuance, which he now challenges in his briefing. Because the notice of appeal does not identify these orders (and because the September 2024 award is the subject of a different appeal (A172209)), the attorney's fee award and continuance are beyond the scope of our review here.[6] (See *Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1317 [finding award of expert fees beyond scope of review where notice of appeal "did not mention

---

[6] Miner also challenges Fink's orders and recommendations that were issued and filed with the court between May and September 2024 and therefore were also not identified in Miner's March 2024 notice of appeal. However, because Miner challenges the entirety of Fink's appointment, we liberally construe the notice to incorporate all of Fink's orders instead of finding them beyond our jurisdiction. (Cal. Rules of Court, rule 8.100(a)(2); *In re Daniel Z.* (1992) 10 Cal.App.4th 1009, 1017 [construing notice of appeal specifying jurisdictional findings as allowing review of dispositional order].)

the pending motion to tax costs"].)  We turn, therefore, to Miner's appeal of Fink's appointment and subsequent orders.

## II.  Notice of Disqualification

The form parenting coordinator stipulation adopted by Khym and Miner provides, "The Parenting Coordinator may be disqualified on any of the grounds applicable to the removal of a judge referee or arbitrator."  Citing *Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156 and *Roussos v. Roussos* (2021) 60 Cal.App.5th 962, Miner argues this provision necessarily incorporates the CAA's statutory procedures, including a purportedly " 'absolute' " right to remove the coordinator.  He is incorrect.

The parenting coordinator stipulation is a contract subject to the basic rules of contract interpretation.  (*Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 694 ["We interpret a stipulation, including a stipulation entered as a court order, in accordance with the ordinary rules of contract interpretation"].)  "The primary object of contract interpretation is to ascertain and carry out the mutual intention of the parties at the time the contract was formed, determined from the writing alone, if possible."  (*In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667, 688.)

Preliminarily, the plain language of the parenting coordinator stipulation does not incorporate the CAA; it does not include an agreement to arbitrate disputes and does not reference the CAA by either name or statute.  (See *Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1341 [explaining the "significant differences" between an agreement for judicial referee such as a parenting coordinator and an arbitration agreement].)  Instead, the plain language of the parenting coordinator stipulation states a coordinator "may" be disqualified, which does not provide the parties with the absolute disqualification right that Miner now claims.

6

(*Woolls v. Superior Court* (2005) 127 Cal.App.4th 197, 208 ["Generally speaking, 'the word "may" is permissive—you can do it if you want, but you aren't being forced to' "].)

Even assuming, arguendo, that the parenting coordinator stipulation incorporates the CAA, Miner does not satisfy the requirements for disqualification.  Under the CAA, after a party's first disqualification of a neutral, "a subsequent appointee" may be disqualified "only upon a showing of cause."  (§ 1281.91, subd. (b)(2).)  Miner exercised his first disqualification against Palash.

Thus, here, Miner expressly sought disqualification "with cause" based upon Fink's "five (5) current or recent assignments" involving Khym's counsel's law firm.  But this information is not new, as Miner, himself, disclosed Fink's relationship with Khym's attorney's law firm when he recommended Fink to the trial court in November 2023, noting that Fink "does not feel that any of these prior interactions would in any way compromise his ability to serve as a neutral parenting coordinator in this matter."  Miner's petition for disqualification offers no additional or different information, nor does it explain why the circumstances that did not prevent Miner from recommending Fink in November 2023 required his disqualification in February 2024.

To the extent Miner predicates his claim on Fink's supplemental disclosure of specific cases pending and his stated willingness to accept future assignments, any such conflict is insufficient to justify disqualification and hypothetical.  (Cf. *Dornbirer v. Kaiser Foundation Health Plan, Inc.* (2008) 166 Cal.App.4th 831, 842 [for purposes of vacating an arbitration award, " 'grounds for disqualification' " means "a failure to disclose the existence and

7

nature of any relationship between the arbitrator and the parties or the parties' attorneys, *not the specifics of each such relationship*," italics added].)

Ultimately, even under a de novo standard of review, Miner fails to show cause to disqualify Fink, as the trial court implicitly determined in ordering Fink's appointment despite Miner's notice of disqualification. (See *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 383 [applying de novo standard of review to reverse order vacating arbitration award based on allegedly inadequate disclosures]; see also *In re Marriage of Sahafzadeh-Taeb & Taeb* (2019) 39 Cal.App.5th 124, 145 ["we must presume in favor of the trial court's order ' "every finding of fact necessary to support it" ' "].)

### III.  Due Process

Miner's next argument combines two distinct challenges, neither meritorious.[7]  First, Miner suggests the court's ex parte order confirming Fink's appointment denied him "an opportunity to be heard."  Under the same due process heading, Miner then appears to argue the ex parte application did not demonstrate "irreparable harm and immediate danger."

---

[7] After the close of briefing, Miner filed two letters of new authority pursuant to California Rules of Court, rule 8.254(a), which authorizes parties to inform the Court of Appeal "of significant new authority . . . that was not available in time to be included in the last brief that party filed."  He included a Massachusetts Supreme Court case from 2014 (*Bower v. Bournay-Bower* (2014) 469 Mass. 690) and an unpublished Ohio Court of Appeal case from 2019 (*Gregory v. Gregory* 2019-Ohio-5210), which Miner contends support his due process argument.  But because Miner's "new authority" was available before Miner filed his reply brief in April 2025, it does not satisfy California Rules of Court, rule 8.254(a).  Moreover, these cited authorities discuss the statutes and case law of other states that "are not binding on us." (*People v. Montes* (2014) 58 Cal.4th 809, 884.)  In any event, as Miner conceded at oral argument, both cases are distinguishable in that they involve appointments without the parties' agreement, which was not the case here where the parties entered into a stipulated agreement to appoint a parenting coordinator.  (*Bower*, at p. 691; *Gregory*, at ¶¶ 2, 3.)

To start, " '[a]ll that is necessary' " to satisfy due process " 'is that the procedures be tailored, in light of the decision to be made, . . . to [ensure] that they are given a meaningful opportunity to present their case.' " (*Oberholzer v. Commission on Judicial Performance* (1999) 20 Cal.4th 371, 392; see also *Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 610–611 [enumerating the considerations in evaluating due process claims].) In other words, and as is the case here, "procedural due process does not require a trial-type hearing in every instance." (*Oberholzer*, at p. 392.) Importantly, the California Rules of Court expressly allow for issuance of ex parte orders in family law cases to "prevent an immediate danger or irreparable harm" to the child. (Cal. Rules of Court, rule 5.151(a), (b)(1).)

In November 2023, Miner recommended Fink to the court as one of three proposed parenting coordinators, noting Fink had previously "worked with" Khym's counsel's firm "as a neutral." In December 2023, Miner participated in a "judicially supervised conference" concerning the six parenting coordinators proposed by both Khym and Miner, after which the court ordered, "the parties will select David Fink" as an alternative to Palash.[8]

After Fink issued his own supplemental disclosures on February 6, 2024, Miner filed a notice of disqualification, which was supported by a seven-page memorandum of points and authorities and 10 exhibits. To counter Khym's subsequent ex parte application, Miner filed a "responsive"

---

[8] We do not have a transcript or settled statement of these proceedings; thus, we presume Miner had an opportunity to raise any issues about Fink with the court at the conference. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187 [" 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court' "].)

declaration, in which he requested affirmative relief, as well as a further memorandum of points and authorities in opposition along with another accompanying declaration. Through these pleadings and proceedings, Miner was afforded ample opportunity to present his argument about Fink to the court.[9]

We turn next to Miner's argument that Khym's ex parte application did not demonstrate the "irreparable harm" necessary to warrant relief. First, Miner's failure to use appropriate headings or articulate a standard of review means this argument is forfeited. (*Tsakopoulos Investments, LLC v. County of Sacramento* (2023) 95 Cal.App.5th 280, 310 [" 'Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by heading' "]; *Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 [failing "to articulate the standard of review on appeal [is] in and of itself a potentially fatal omission"].)

Second, the trial court's finding of harm is supported by substantial evidence. (*Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 625 ["Our task is to ensure that the trial court's factual determinations, whether express or implied, are supported by substantial evidence"].)

_____

[9] For the first time on reply, Miner argues he was denied due process "with regards to false accusation[s] of physical child abuse to a potential therapist." The claim apparently stems from an August 2023 incident where a therapist canceled an appointment with the child based on Khym's purported claims of abuse by Miner. Miner offers no explanation why this issue, which predates his recommendation of parenting coordinators, could not have been brought to the trial court's attention. Regardless, Miner forfeited the argument by failing to raise it in his opening brief. (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275 ["We will not ordinarily consider issues raised for the first time in a reply brief"]; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247 [self-represented litigants are held to the same procedural rules as an attorney].)

Khym's ex parte application was supported by her declaration, which indicated that, at that time, the parties had been "without [a] parenting coordinator for approximately eight months," and it was not in the "best interests" of the child—who was "exhibiting increased symptoms of anxiety" and lacking "basic needs" like heat and food while with Miner—to wait to appoint a parenting coordinator. While Miner may dispute these contentions, they nevertheless constitute substantial evidence supporting the trial court's finding of irreparable harm. (*City of Fontana v. California Dept. of Tax & Fee Administration* (2017) 17 Cal.App.5th 899, 923 ["The possibility of disagreement ordinarily inheres in the substantial evidence standard"]; *Greisman v. FCA US, LLC* (2024) 103 Cal.App.5th 1310, 1322 [" 'If the trial court's resolution of the factual issue is supported by substantial evidence, it must be affirmed' "].)

## IV.  Appointment of a Therapist

After his appointment, Fink issued four orders and recommendations pursuant to the parenting coordinator stipulation, including an order appointing a therapist for Miner and Khym's child. Miner's "stance" is that "all orders made by Mr. Fink are invalid" due to Miner's notice of disqualification and purported denial of due process. Miner goes on to "specifically focus" on Fink's appointment of a therapist, claiming it "oversteps" Fink's authority. We disagree with both assertions.

First, as discussed above, we reject Miner's "stance" regarding his notice of disqualification and denial of due process. As for Fink's appointment of a therapist, the parenting coordinator stipulation defines the "role of the Parenting Coordinator" as "to decide disputes relating to the clarification *and implementation*" of the custody order, which provides: "The child should participate in individual psychotherapy to address stress related

11

changes in her family life and the stress of the co-parenting conflicts."
(Italics added.) Thus, Fink's appointment of a therapist was consistent with
his authority under the custody order and parenting coordinator stipulation.

Additionally, to the extent Miner took issue with Fink's related orders
and recommendations, he could have sought review in the trial court,[10] yet,
according to the record on appeal, he did not. As required by the settled rules
of appellate review, " ' "issues not raised in the trial court cannot be raised for
the first time on appeal." ' " (*Doe WHBE 3 v. Uber Technologies, Inc.* (2024)
102 Cal.App.5th 1135, 1152.) We therefore deny Miner's attempt to
challenge Fink's appointment of a therapist for the first time in this appeal.

## V. Hearsay

For Miner's final argument, he asks us to "invalidate[ ]" the parenting
coordinator stipulation because the parenting coordinator "is giving his or her
expert witness [opinion] to the court through a written or verbal
recommendation," which "the court is predisposed to believe," allegedly in

---

[10] "Any dispute regarding the authority of the Parenting Coordinator"
must be presented to the parenting coordinator for resolution and challenges
to the parenting coordinator's resolution "can be presented to the court by
noticed motion." Alternatively, the parties can object to the parenting
coordinator's recommendation: "If an objection to the recommendation of the
Parenting Coordinator is timely received [i.e., "within 10 (ten) court days of
notice to the parents of the recommendations"], the Parenting Coordinator
will notify the parents that the recommendations are not being submitted to
the court. Either party may then submit the matter to the court for a *de novo*
review by filing a Request For Order requesting a judicial determination on
the issues addressed in the recommendations. The parties agree that either
party may present the Recommendations of the Parenting Coordinator to the
court for consideration at the judicial review."

violation of the hearsay rules and *People v. Sanchez* (2016) 63 Cal.4th 665.[11] This argument also fails.

Again, there is no indication that Miner raised this issue below, thus the argument is forfeited. (*Doe WHBE 3 v. Uber Technologies, Inc.*, *supra*, 102 Cal.App.5th at p. 1152.) Nor is the challenge timely since Miner waived related hearsay objections in June 2022, when he signed the parenting coordinator stipulation while represented by counsel.[12] In addition, Miner does not identify what the purported hearsay is. Thus, we decline Miner's inadequately developed invitation to invalidate the parenting coordinator stipulation based on unidentified hearsay. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 [we may " 'disregard conclusory arguments that . . . fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt' "].)

## DISPOSITION

The February 16 and 20, 2024 orders are affirmed. In the interests of justice, we decline to award costs. (Cal. Rules of Court, rule 8.278(a)(5).)

---

[11] In *People v. Sanchez, supra*, 63 Cal.4th at page 686, the California Supreme Court held "case-specific out-of-court statements" constitute hearsay when an expert "treats the content of those statements as true and accurate to support the expert's opinion."

[12] The parenting coordinator stipulation contains the following waiver, next to which both Miner and Khym initialed: "I understand that the Parenting Coordinator may consider information gathered from third parties . . . in order to make an informed decision or recommendation and that any hearsay objection to the inclusion of such information in the Parenting Coordinator's decision or recommendation is waived."

DESAUTELS, J.

We concur:


STEWART, P.J.


MILLER, J.


*In re Marriage of Khym and Miner* (A170007)